## Wheeling.

## MOORE *v.* SUPERVISORS OF WETZEL COUNTY.

Decided November 19, 1881.

*(PATTON, JUDGE, absent.)

1. Where a declaration contains the common counts in *assumpsit* and also a special count, and on demurrer to the declaration and each count thereof the court sustains the demurrer to the special count erroneously, but the facts stated in the special count, and on which it is based, are such as could be proven by the plaintiff on the trial of the issue on the common counts, and it affirmatively appears from the record, that an attempt was made to prove them on the trial, or it otherwise appears from the record, that on the trial of the case no injury could have arisen to the plaintiff from the error of the court in sustaining the demurrer to the special count, this Court will not reverse the judgment below for such error.

2. If the plaintiff has done everything, which has to be executed on his part, and nothing remains but a mere duty on the defendant's part to pay money, the plaintiff may recover on the general counts and need not declare specially.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Wetzel, rendered on the 10th day of April, 1875, in an action in said court then pending, wherein Wilford Moore was plaintiff, and The Board of Supervisors of Wetzel county were defendants, allowed upon the petition of said Moore.

Hon. C. S. Lewis, judge of the second judicial circuit, rendered the judgment complained of.

GREEN, JUDGE, furnishes the following statement of the case :

Wilford Moore, assignee of David Lancaster, in January, 1872, brought his action of assumpsit against the Supervisors of Wetzel county in the circuit court of said county. The declaration contained the common counts for work and labor, money lent, advanced to, paid, laid out and expended for, money had and received; and then followed this special count:

*Submitted before Judge P. took his seat on the bench.

"And whereas, heretofore, to-wit, on the 25th day of February, 1869, at the county aforesaid, the said defendants were and have ever since been a corporation at law clothed with certain rights and privileges and charged with certain duties; and the President of the United States at a certain time, to wit, on the 19th day of December, A. D. 1864, having issued his proclamation calling out three hundred thousand men to assist in putting down the then existing rebellion, and the said county of Wetzel, forming an integral part of the United States, became and was liable to furnish a proportionate number of said three hundred thousand men under said call, and the *quota* of the said county was fixed by the proper authorities at one hundred and ten men, with provision that unless the said number of men was raised within a specified time, a draft would be ordered to take place at a subsequent day for the purpose of filling said *quota;* and the said supervisors of the county of Wetzel, in the state of West Virginia, acting for the people of said county, assembled at the court-house of said county, on the 11th day of February, A. D. 1865, for the purpose of consulting together in regard to raising a bounty to be paid to such recruits as would be credited to Wetzel county, West Virginia, under said call, at which said meeting the said supervisors under and by virtue of the authority conferred upon them by chapter 6, section 1 of the Acts of the Legislature of West Virginia, passed February 6th, A. D. 1864, ordained that forty thousand dollars be levied for the purpose of paying a bounty to one hundred and ten men, the *quota* of the county, and to pay the necessary expenses of procuring the same. And at another meeting of the said supervisors held at the same place, on the 25th day of February, A. D. 1865, by an ordinance of the same date, it was provided, that each recruit credited to Wetzel county under said call be allowed $350.00, and provided for the issuing of bonds in the manner in said ordinance set forth; and the said plaintiff avers, that his assignor, David Lancaster, was mustered into the service of the United States as a private in Company G, 7th regiment of West Virginia Infantry, on the 13th day of March, A. D. 1865, and credited to the quota of said county of Wetzel under said call, at the special instance and request of the said defendants and for the said defendants, and they,

the said defendants, thereby became and are liable by virtue of their promise in said ordinance of February 25, A. D. 1865, contained.

"The plaintiff in this suit further avers, that his said claim of $500.00 was duly presented to the said supervisors of the county of Wetzel, on the 31st day of October, A. D. 1871, when they were convened for the transaction of business, and the said supervisors were requested to issue their bonds in favor of the said plaintiff for the said sum of $500.00, and the said supervisors refused and neglected to issue their bonds for the same or any part thereof. And the said plaintiff at another meeting of the said supervisors on a certain other day, to wit, the day and year last aforesaid, presented his claim of $500.00 to the said supervisors for payment, and they again refused and neglected to pay the same, it being then and there duly presented to them for allowance and payment. And the said plaintiff on another day, to wit, on the 2d day of January, 1872, when the said supervisors had again met for the transaction of business, appeared before them and requested them to issue their bonds or pay his said claim of $500.00, and they again refused and neglected to issue their bonds or to pay the same, it being then and there a second time duly presented to them for allowance and payment. Nevertheless, the said defendants, not regarding their said several promises and undertakings, have not as yet issued their bonds to the said plaintiff, nor have they paid the said several sums of money, or any or either of them, or any part thereof, to the said plaintiff, although often requested so to do, but to issue the said bonds for the said sum of money to the plaintiff, said defendants have hitherto wholly neglected and refused, and still do neglect and refuse to the damages of the plaintiff $500.00. Therefore he sues, &c."

The following bill of particulars was filed with the declaration :

" The Supervisors of the County of Wetzel, State of West Virginia,                                              Dr.

" To Wilford Moore, assignee of David Lancaster, who was mustered into the service of the United States as a private in Company G, 7th regiment of West Virginia Volunteer Infantry in the war of 1861, under the call of the Presi-

dent of the United States, of December 19, A. D. 1864, and who was credited to the quota of the county of Wetzel, West Virginia, under said call.

" Amount ...... ........... ......... ........... ............... ........ ........$350 00

"Dated October 31, 1871."

On April 8, 1875, the following order was entered in the case :

"This day came the parties, by their attorneys, and on motion of the defendant, the orders made at rules in this cause are set aside ; and thereupon the defendant, by its attorneys, filed its general demurrer to the plaintiff's declaration, and to each count thereof, and the plaintiff joined in said demurrer. And for further plea, the defendant says : that it did not assume upon itself in manner and form as the plaintiff against it hath complained ; and of this it puts itself upon the country, and the plaintiff likewise, and issue is thereon joined.   And for a further plea the defendant says the cause of action in the plaintiff's declaration named did not accrue within five years before the institution of this suit, and that the defendant has not assumed upon itself to pay any of the moneys demanded in this suit within five years before the institution of this suit, and this it is ready to verify, and the plaintiff takes issue upon said plea.   And thereupon the matters of law arising upon the defendant's demurrer to the plaintiff's declaration being argued, it seems to the court that the said declaration as to the last count therein contained, being the special count in said declaration, are not sufficient in law for the plaintiff to have and maintain his action against it, the demurrer is sustained to this count; and the residue of the counts, to wit, the common counts, are adjudged sufficient and the said demurrer is overruled as to them.   And the trial of the issue coming on, a jury came, to wit:

"Augustus Wyatt, Nelson Gurner, Thomas M. Stone, John Morgan, Frederick Fox, James Newman, Lew M. Lowe, J. A. Steele, John W. Morgan, Alpheus Wyatt, Thomas H. Alley and John H. Moore, who after being empanelled and sworn the truth to speak upon the issue joined, the plaintiff offering in evidence the ordinances of the Board of Supervisors of said Wetzel county, to the introduction of such evidence the

defendants objected, which objection was sustained by the court and the evidence excluded, and the plaintiff offering no further evidence, the matters in controversy were submitted to the jury, and the jury rendered the following verdict:

" 'We, the jury, find for the defendant.'

"Therefore, it is considered by the court, that the defendant recover of the plaintiff its costs about its defence in this behalf expended.

"The following bill of exceptions was taken by the plaintiff during the trial of the case:

" '*Be it remembered,* That on the trial of this cause, the plaintiff, to sustain the issue on his part, offered in evidence before the jury certified copies of the ordinance of the Board of Supervisors of Wetzel county, the first one passed February 11, A. D. 1865, which is in words and figures following:

" 'SATURDAY, February 11th, 1865.

" ' Board of supervisors met pursuant to an adjournment of · Friday, February 3d, 1865. Present, A. P. Brookover, president, H. Garner, William Anderson, James Jolliff, James Cochran, I. E. Williams.

" ' The Board having met for the purpose of consulting together in regard to raising a bounty for volunteers to fill *quota* of men for this county, under the call of the President of the United States, of December —, 1864, for three hundred thousand men, whereupon it is ordained by the board of supervisors of Wetzel county, West Virginia, that $40,000.00 be levied for the purpose of paying a bounty to one hundred and ten men, the *quota* of this county, and to pay the necessary expenses of procuring the aforesaid number of men.

" ' And it is further ordered that E. Kyle, George W. Bier, John M. Morgan and Wilford Moore be appointed a committee to negotiate the said loan and pay to such recruits as may be duly credited to Wetzel county, under said call, amount that may be agreed on by the said committee, or either one of them, and the recruits so credited.

" ' And it is further ordained, that the said amount shall be negotiated to be payable in two, three and four years in equal instalments, interest bearing bonds to be issued for the said loans, and signed by the president and clerk of said board, to bear interest from the date of the bonds. The said committee

are not authorized to negotiate the said loan at more than ten per cent. discount, and the interest to be levied for and payable annually.

"'Ordered, that this board adjourn.

"'A. P. Brookover, *President.*

"'Z. S. Springer, *Clerk.*'

"The second ordinance, passed February 25th, A. D. 1865, is in words and figures following, to wit:

"'Saturday, February 25, 1865.

"'Board met for the purpose of consulting together in regard to the bounty ordered at the meeting held February 11, 1865. Present: A. P. Brookover, president; F. E. Williams, William Anderson, James Cochran and Henry Garner, Grant township being unrepresented.

"'The motion being put to change the order made at the last meeting of this board so as to allow each township who may furnish volunteers under the call mentioned in said order, the same was lost by the following supervisors voting against it, viz: James Cochran, Wm. Anderson and A. P. Brookover; F. E. Williams and H. Garner voting for it.

"'Be it ordained by the Board of Supervisors of Wetzel county, West Virginia, that the order at the meeting on the 11th day of February, 1865, levying $40,000.00 to pay bounties be so altered as to allow each recruit credited to Wetzel county under the said call be allowed the sum of $350.00, and that bonds may issue for the said sum of $350.00 in three several bonds of $116.66⅔ each, payable as the aforesaid order directs, and that the same be signed by the president and clerk of this board, the said bonds not to be taxable for county purposes in this county during the time and until they are due. It is understood that the aforesaid bonds are to issue to persons furnishing money as well as to the recruits. One third of all bonds to be payable in two years; one third in three years, and the residue in four years. The following named persons are hereby appointed a committee to sell the bonds so issued and make due return to the clerk of this board, to wit: Charles Horner in Church township, J. J. Pettigrew in Center township, S. I. Robinson and John Lantz in Greene township, Levi M. Lowe and Elihu Morgan in Grant township, Wilford Moore, Wm. Pegg, R. Kirkland

·and A. G. Calvert in Proctor township, R. W. Cox, G. W. ·Bier and R. Martin for Magnolia. The said committee are ·authorized to recruit at the time and during the pending draft.

" ' Z. S. Springer is hereby authorized to procure blank bonds for the use of said county and deliver the same to any of the above named committee as they may need them and take their receipt for the same.

" ' Ordered, That this Board do adjourn.

" ' A. P. Brookover, *Pres't.*

" ' Z. S. Springer, *Clerk.*'

" 'New Martinsville, Wetzel County, W. Va.

" 'May 6, 1872.

" 'I, Z. S. Springer, clerk of the supervisors of Wetzel county, West Virginia, do certify, that the foregoing is a true copy from the records in my office.

" 'Witness my hand the day and year first written above.

" 'Z. S. Springer, *Clerk.*'

"To which ordinance, as evidence, the plaintiff by his counsel objected, and the court thereupon sustained said objection, to which ruling of the court in refusing to admit said ordinances as evidence the plaintiff by his counsel excepted and tenders this his bill of exceptions, which he prays may be signed and sealed unto him, which is done accordingly.

"C. S. Lewis, [Seal]."

To the judgment of the circuit court rendered in this case a writ of error and *supersedeas* was awarded.

*Hanson Criswell & Son,* for plaintiff in error cited the following authorities: Cons. 1863, Art. VII, §§ 3, 4; Acts 1863, ch. 8, § 1; Acts 1864, ch. 6, § 1; Sedgw. Stat. & Cons. L. 570; *Id.* 521; 32 Tex. 405; 30 Md. 112; 13 Mich. 435; 33 N. Y. 354; 41 N. Y. 137; 36 Barb. 117; Cool. Cons. L. (2d ed.) 520; 1 Neb. 182; 3 Vroom 362; 9 Ia. 104; 58 Pa. 234; 24 Ind. 509; 25 Ind. 110; *Id.* 490; 52 Pa. 432; *Id.* 474; 8 W. Va. 74.

*Basil T. Bowers,* for plaintiff in error, cited the following authorities: 3 W. Va. 590; Cool. Const. Lim. 149, note 3; *Id.* 142; 8 W. Va. 74; *Id.* 612; 13 Mich. 495; 3 Metc. (Ky.) 566; 50 N. Y. 504; *Id.* 553; 28 Ill. 534; 53 Pa. St.

391; 15 Ind. 455; 2 Metc. (Ky.) 150; 14 Md. 185; 16 Mich. 488; 29 Wis. 400; 9 Am. Rep. 578; 42 Mo. 578.

*Ewing & Riley* for defendants in error cited the following authorities: Const. 1863, Art. IV, § 36; Const. 1872, Art. VI, § 30; 3 W. Va. 590; 24 Ind. 295; 14 Minn. 523; 53 Barb. 70; 38 N. Y. 193; 42 N. Y. 404; 20 Mich. 349.

Green, Judge, announced the opinion of the Court:

The merits of the controversy in this case are involved in the question, whether the ordinances of the supervisors of Wetzel county promised to pay to each volunteer in the United States army, who should be credited to the quota required of that county, the sum of $350.00. This question resolves itself into two distinct and independent enquiries, first, whether such promise can be deduced from a fair construction of the language of these ordinances, and secondly, had the supervisors of the county legal authority to make such promise. This authority is claimed for them under the act of the Legislature of West Virginia, passed February 6, 1864. See Session Acts of 1864, chapter 6, page 5. But on the other hand it is contended, that this act conferred no such authority, because it was unconstitutional and void.

It is obvious, that the first ordinance cannot be construed as making such a promise to such recruits. It simply provided, that bonds to the amount of $40,000.00 should be issued by the county to be negotiated by certain persons, and out of the moneys so raised they were to pay in cash to each of such recruits such an amount, as by a contract with such recruit these persons on behalf of the county might agree to pay. These persons were not authorized to make any contract with such recruits for any money to be paid them at a future day; and under this first ordinance it is clear, that the county could not incur any responsibility in the future to any recruit. The language of this ordinance was, that the committee was " to negotiate the loan and pay to such recruit, as may be duly accredited to Wetzel county under said call, the amount that may be agreed upon by said committee, or either of them, and the recruit so accredited."

The second ordinance did not repeal the first ordinance. It simply amended it. The only alteration made in this provis-

ion of the first ordinance was, first, to take from the committee the authority to fix with any recruit the amount to be paid him in cash for his services, and instead thereof the supervisors themselves fixed the amount in cash, which the committee was authorized to pay to each recruit, at $350.00. Secondly, it authorized the committee to pay this amount in cash out of the monies in their hands arising from the sale of the county bonds, or to pay it to the recruit in three of these county bonds of $116.66⅔ each. There was no authority conferred on the committee to promise on behalf of the county to pay them anything in the future. The ordinance did not authorize the committee to make any contract with the recruits, but simply authorized $350.00 in cash or in county-bonds to be paid to each of the recruits by the committee. If any such contract or promise was made by the committee it was unauthorized and imposed no obligation on the county. It is true, that this second ordinance does say: "each recruit credited to Wetzel county under said call is to be allowed $350.00." But the ordinance goes on to provide expressly how it is to be allowed, that is, by payment in cash, as provided in the previous ordinance unaltered in this respect or by giving to each recruit three bonds of Wetzel county, amounting in all to $350.00. It seems to me clear, that under these ordinances no obligation could be imposed on the county of Wetzel to pay anything to any recruit, unless under them he became the holder of bonds of the county.

The object of the supervisors in withholding, as they did, from his committee any power to bind the county to pay to any recruit, who did not hold these county bonds, anything for their services seems to have been to avoid all controversies and disputes with their recruits and to prevent demands being made on the county for any sum exceeding the $40,-000.00, which they were willing to appropriate for this purpose. This was obviously a prudent course on their part. They wisely declined to make any promise to pay anything in the future to any recruit, but directed the committee to deal with him for cash only or its equivalent, the county bonds. The case of *Childers et al.* v. *The Supervisors of Jackson County*, decided by this Court on March 2, 1874, but not reported, illustrates the wisdom of the supervisors of Wetzel

county in the course pursued by ·them. That case shows, that in that county the board by ordinance agreed to pay the sum of $100.00 bounty to each accepted volunteer in the service of the United States for three years or during the war for enough men to fill up the quota of Jackson county under the late call of the President of the United States. The result was, as the answer of the supervisors in that case shows, that while they deemed that only twenty-two men were needed, when the ordinance passed, to fill up the quota of Jackson county, more than one hundred recruits afterwards set up claims to be paid $100.00 each under this order ; and the county actually paid a much larger number than the twenty-two besides getting into disagreeable and expensive litigation.

The second enquiry, whether the board of supervisors of Wetzel county had any authority to contract with any recruit to pay him anything on behalf of the county, is unnecessary under the views we have expressed in order to a determination of the controversy in this case. As the answer to this enquiry depends on the question, whether chapter 6 of the Acts of 1864, page 5, was unconstitutional, so far as it authorized " the supervisors of the several counties of the State from time to time during the war to borrow money in their corporate names for the payment of bounties· to soldiers," it is better for us in this case not to consider or decide this question. See *Hoover* v. *Wood*, 9 Ind. 287. It is more proper to decide this constitutional question when its decision becomes necessary in order to decide some case. See *ex parte Randolph*, 2 Brock. 447 ; *Frees* v. *Ford*, 6 N. Y. 177 ; *Mobile and Ohio Railroad Co.* v. *State*, 29 Ala. 573.

The views we have expresed show, that the plaintiff in this case cannot sustain his action, and it will therefore save trouble and expense to all parties, if the judgment of the circuit court can be affirmed by this Court without remanding the case for further proceedings, as it is obvious, that no change in the pleadings or evidence, which can take place, will give the plaintiff a right to recover in this action ; and therefore this case should not be remanded, unless the record as now presented is so defective and contains such errors, as necessitates a reversal of the judgment of the court below and· a remanding of the case for further proceedings.

The first error claimed by counsel of the plaintiff in error was the sustaining by the court below of the demurrer to the last or special count in the declaration. That count states, that by the second ordinance of the supervisors of Wetzel county they agreed to allow to each recruit credited to Wetzel county $350.00, omitting to state what, we have seen, was a material qualification of this language, that said $350.00 to be allowed was to be paid in cash or in county-bonds. If this special count had been replied to generally instead of being demurred to, the court would properly have refused to permit these ordinances being offered in evidence to the jury, as they were materially different from the ordinances described in this count of the declaration. But described as they were in the declaration, if we were to regard this chapter 6 of Acts of 1864, page 5, as constitutional, and waive certain supposed errors in the framing of this special count, the court below might have overruled the demurrer to it. And if we were to admit, that it erred in sustaining this demurrer, we would have further to enquire, before we reversed the case for this error, whether the plaintiff could have been injured by this error; for if not prejudicial to him, this Court would not reverse the case because of such error.

In considering whether the plaintiff could have been injured by the action of the court below sustaining the demurrer to this special count we observe, first, that the inserting of this special count in the declaration was in no manner necessary to enable the plaintiff to insist upon and prove the case stated in this special count. The rule being, that if the agreement has been completely performed by the party, who was to render the service, and there was nothing special in the contract in relation to the time or manner of payment, or the credit, if any, has expired, there is then a duty on the other party to pay the stipulated price, for which a general *indebitatus assumpsit* will lie. *Caruthers, &c.* v. *Graham*, 14 East. 578; *Ladue* v. *Seymour*, 24 Wend. 63. Wherever the plaintiff has done everything, which was to be executed on his part, before making his demand, and nothing remains but a mere duty on the defendant's part to pay money, the plaintiff need not declare specially but may recover on a general count. *Scott* v. *Parker*, 1 Adol. & El. N. S. (41 E. C. L.) 812; *Fel-*

*ton* v. *Dickison*, 10 Mass. 292; *Porter* v. *Talcott*, 1 Cow. 378, 386; *Baker* v. *Corey, &c.,* 19 Pick. 496; *Kelley* v. *Foster,* 2 Binn. 4.

These authorities abundantly show, that the case stated in the special count could in the case before us have been proven under the general counts in the declaration. And in point of fact on the trial the plaintiff proceeded to prove his case, as stated in this special count, and had the ordinances of the supervisors of Wetzel county been such, as they were stated to be in this special count, the court below ought to to have allowed them to be read in evidence to the jury as proper evidence as much under the general as under the special counts, unless they were excluded, because the supervisors had no right to pass such ordinances, the act authorizing it being unconstitutional. But assuming this act to be constitutional the circuit court properly refused to permit these ordinances to be read to the jury under the general counts, because according to their true construction they did not tend to sustain plaintiff's case, but on the contrary showed, that he could have had no case, as they show, that no promise to pay anything in the future to any recruit was authorized to be made. Had the special count been in the declaration, these ordinances would still have been excluded from the jury, as they were essentially variant in meaning from the ordinances described in this special count. It has been decided by this Court in *Hale* v. *The West Virginia Oil and Oil Land Company,* 11 W. Va. 229, that it is not error to reject a special plea setting up matter in defence to the action, when the plea of *non assumpsit* is filed, and the matter of defence of such plea may be given in evidence under the plea of *non assumpsit.* In *Douglass* v. *Central Land Co.,* 12 W. Va. 502, it was decided, that though an issue be not made on a special plea, yet if the evidence to sustain it was admissible under the general issue, and *non assumpsit* had been pleaded, this Court ought not to reverse a judgment on a verdict for such irregularity, when all the evidence is certified and sustains the verdict. See *Baltimore & Ohio R. R. Co.* v. *Laffertys,* 14 Gratt. 478; *Baltimore & Ohio R. R. Co.* v. *Polly, Woods & Co.,* 14 Gratt. 454; *Fant* v. *Miller & Mayhood,* 17 Gratt. 47; *Merchants Bank of Wheeling* v. *Evans & Dorsey,* 9 W. Va. 373. In the case be-

fore us the entry on the record-book states, that with the exception. of these ordinances the plaintiff gave no evidence to the jury.

It is true these were cases of special pleas offered, where the matter of defence set up could have been proven under the several issues already filed ; but the principle involved in these decisions is equally applicable, where a special count is proposed to be inserted, and the common counts .are already filed in the case, and what is stated in the special count could be as well proven under the common counts.   We feel safe in laying down this rule, that if there are common counts in a declaration, and a special count be included, which is such, that all the facts alleged in it, and on which it is based, could be as well proven by the plaintiff under the common counts, and the court improperly sustains a demurrer to such special count, and the record shows, that at the trial of the case the plaintiff in point of fact sustained no injury from the action of the court in sustaining the demurrer to the special count, the appellate court will not reverse the judgment below because of such error.

We are therefore of opinion, that there was no error in the judgment of the circuit court of April 8th, 1875, and the same should be affirmed, and the defendant in error should recover of the plaintiff in error its costs in this court expended and $30.00 damages.

JUDGES HAYMOND AND JOHNSON CONCURRED.

JUDGMENT AFFIRMED.